JUDGE RAKOFF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**19 CV 01540**

CARBONYX LICENSE & LEASE LLC,
C6 ARDMORE VENTURES, LLC,
RIVER PARTNERS 2012 – CBX LLC,
BHAVNA PATEL, and FRANK RANGO,

19 Civ. _____

                                    Plaintiffs,

**COMPLAINT**

            -against-

CARBONYX INC.,

**JURY TRIAL DEMANDED**

                                    Defendant.

Plaintiffs Carbonyx License & Lease LLC ("CL&L"), C6 Ardmore

Ventures, LLC ("C6 LLC"), River Partners 2012 – CBX LLC ("River Partners"), Bhavna

Patel ("Mrs. Patel"), and Frank Rango ("Mr. Rango") (collectively, "Plaintiffs"), by their

attorneys, Olshan Frome Wolosky LLP, allege against defendant Carbonyx Inc.

("Carbonyx" or "Defendant"), as follows:

### ALLEGATIONS COMMON TO
### ALL CAUSES OF ACTION

#### The Parties, Jurisdiction and Venue

1.      Plaintiff CL&L is a limited liability company organized under the

laws of Delaware. Its members are citizens of New York and Connecticut for purposes

of 28 U.S.C. § 1332(a).

2.      Plaintiff C6 LLC is a limited liability company organized under the

laws of Texas. Its member is a citizen of Connecticut for purposes of 28 U.S.C. §

1332(a).

.

3.    Plaintiff River Partners is a limited liability corporation organized under the laws of Delaware.  Its members are citizens of New York, California, Florida, Maryland, Massachusetts, North Carolina, South Carolina, and Utah for purposes of 28 U.S.C. § 1332(a).

4.    Plaintiff Mrs. Patel is an individual and a resident of Connecticut. Mrs. Patel is the sole member of Plaintiff C6 LLC, and one of two members of Plaintiff CL&L.  Mrs. Patel was married to Mukesh Patel ("Mr. Patel") at all relevant times until he passed away on April 29, 2017.

5.    Plaintiff Mr. Rango is an individual and a resident of New York. Mr. Rango is one of two members of Plaintiff CL&L.

6.    Defendant Carbonyx is a company incorporated under the laws of the State of Delaware with its principal place of business in Texas.  Carbonyx is a citizen of Delaware and Texas for purposes of 28 U.S.C. § 1332(a).

7.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this is a civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

8.    In the ███████████ Loan Agreement (defined below), Carbonyx irrevocably submitted to personal jurisdiction in this Court and the venue of this Court for all disputes arising from or in any way relating to those agreements. *See*

██████████████████ Loan Agreement § 8.01.[1]  The instant action arises from those

agreements as well as from a financing provided by C6 LLC.

# I.

## SUMMARY OF THE CASE

**A.**   **Carbonyx**

      9.     Carbonyx is a Delaware corporation primarily in the business of
producing a carbon alloy material created as a replacement for metallurgic coke.
Carbonyx was founded in 2000 by Siddhartha Gaur, who is and has at all times been
Carbonyx's Chief Executive Officer.  Carbonyx's principal place of business is located in
either Plano, Texas (according to Carbonyx's website) or Allen, Texas (according to
Carbonyx's attorney).  Carbonyx's website states that it has facilities in Ardmore,
Oklahoma (the "Ardmore Plants") and Goa, India, and has licensed its Carbon Alloy
Synthesis Process ("CASP") to a large steel manufacturer in Gary, Indiana.

      10.    Mr. Patel, the now-deceased husband of Mrs. Patel, had a close
business relationship with Mr. Gaur.  Mr. Patel invested significant family funds into
Carbonyx and further facilitated third party investments to enable Carbonyx to fund its
operations and develop its business since as early as 2005.

██    ████████████

      11.    

████████████████████████████████████████

---

3



██████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

████████████████████

14. ██████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████

15. ██████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

5



16.

17.



18.

**C.**   **The Notes**

19.    On or about May 1, 2012, four lenders (the "Lenders") entered into an Amended and Restated Loan and Warrant Issuance Agreement (the "Loan Agreement") with Carbonyx, pursuant to which they loaned Carbonyx $13.225 million (the "Loan").  The purpose of the Loan was to fund certain of Carbonyx's operations.

20.     The Loan was provided to Carbonyx by the following Lenders, each of which received a note (each, a "Note," and together, the "Notes") for the following amounts:

    a.     Mr. Patel, in the principal amount of $5,750,000;[2]

    b.     Mr. Rango, in the principal amount of $3,250,000;

    c.     River Partners, in the principal amount of $3,225,000; and

    d.     Harmir Realty Co. LP in the principal amount of $1,000,000.

21.     The Loan Agreement also provided for the issuance of warrants to the Lenders.  The Lenders have not exercised those warrants.[3]

22.     The Loan accrued interest at a rate of 5% per annum (compounded semi-annually), except that:  (a) for the first two years, Carbonyx could, at its option, pay the interest in additional principal on the Notes at a rate of 7.5% (compounded semi-annually), and (b) during any Default or Event of Default, the Loan accrued interest at a rate of 15% per annum (compounded semi-annually).  The Loan had a Final Maturity Date of May 15, 2017, and on that date Carbonyx was required to repay all principal and interest on the Loan. Loan Agreement § 2.03(c) and Annex 1.

---

[2] For purposes of this Complaint, "Lenders" includes Mr. Patel at all times until his the date of his death, and Mrs. Patel at all times thereafter. Mr. Patel's Note should have been transferred to Mrs. Patel following his death. However, the Note has not been formally transferred to Mrs. Patel because Carbonyx has taken the position that the Note was converted to preferred stock and there is therefore no Note to transfer. Mrs. Patel vehemently disagrees with this position.

[3] With respect to all allegations that relate to any actions, inactions or positions of the Lenders, such allegations are made as to Harmir Realty Co. LP and Mr. Patel on information and belief.

23.     The Loan Agreement explicitly provides that the right of each Lender to receive the payment of principal and interest on the Notes held by it cannot be impaired or affected without the consent of such Lender. Loan Agreement § 6.06. The Loan Agreement also cannot be amended, modified or waived in any way that reduces the principal amount of any Note or the interest thereon or postpones the scheduled date of payment on the Notes without the express written consent of each Lender affected thereby. Loan Agreement § 8.05. The Lenders did not consent to amend or modify the Notes or waive payment thereon.

24.     From approximately 2012 to 2016, despite a disappointing lack of progress by Carbonyx towards commercial viability, Mr. Gaur consistently communicated an optimistic view about the prospects for the company to the Lenders. Nevertheless, in early 2017, Mr. Gaur was forced to admit that Carbonyx might not have sufficient liquidity to pay the principal and interest due on the Notes, either in whole or in part, on the May 15, 2017 maturity date.  On information and belief, Mr. Patel undertook to discuss potential arrangements with Carbonyx that would not require immediate repayment on the Notes.  On information and belief, one option they discussed was the issuance of preferred stock in lieu of repayment under the Loan Agreement.  With Mr. Patel's untimely passing in late April 2017, no valid agreement between Carbonyx and the Lenders with respect to such potential issuance of preferred stock was executed.

25.     Thus, on May 15, 2017, the Loan matured, and Carbonyx was required to pay all principal and accrued interest. At that time, Carbonyx had repaid none of the principal on the Notes and only a fraction of the accrued interest. Carbonyx failed to repay the principal and interest on May 15, 2017, or at any time since. Carbonyx's

9

failure to pay all amounts due constituted an Event of Default under the Loan Agreement. *See* Loan Agreement § 6.01.

26.     Carbonyx has taken the position that it did not default under the Loan Agreement because the Notes converted to shares of preferred stock in Carbonyx.

27.     The Lenders did not consent to amend or modify the Notes or waive payment thereon.  On information and belief, one Lender (Mr. Patel) indicated to Carbonyx that he was receptive to receiving shares of preferred stock in lieu of payment on his Note, subject to certain conditions, but neither he nor the other Lenders executed a valid agreement under the terms of the Loan Agreement.  In addition, on information and belief, the potential conditions discussed by Mr. Patel and Carbonyx would have required Carbonyx to file a Certificate of Designation with the Delaware Secretary of State in order for Carbonyx to properly issue the contemplated preferred shares.  On information and belief, Carbonyx never filed any such Certificate of Designation.

28.     Except for Mr. Patel, none of the Lenders had any contact with Carbonyx relating to a possible amendment or modification of the Notes.  On information and belief, Mr. Patel frequently was in contact with Carbonyx, and believed that he could help Carbonyx become profitable through continued investments into Carbonyx by Mr. Patel and entities in which he held an interest.  Other of the Lenders did not have the same optimistic view and did not consent to the conversion of the Notes into preferred shares.  However, one of the other Lenders – Mr. Rango – told Mr. Patel (but not Carbonyx) that he would be amenable to a possible amendment or modification of the Notes, assuming it was formalized and executed with acceptable terms.  The potential agreement was never executed.

29.     There were no arrangements between Mr. Patel and the other Lenders that could be construed as making Mr. Patel their agent with authority to act on their behalf to amend or modify the Notes.  And the Loan Agreement could not have been amended, modified or waived in any way that reduced the principal amount of any Note or the interest thereon or postponed the scheduled date of payment on the Notes without the express written consent of each Lender affected thereby. Loan Agreement §§ 6.06, 8.05.

30.     Importantly, the Loan Agreement also provides that Carbonyx must maintain certain corporate governance and provide the Lenders with certain documents and information.  Carbonyx is required to audit its annual financial statements and provide to each of the Lenders (i) quarterly unaudited consolidated financial statements and (ii) annual audited financial statements, no later than 90 and 180 days following the end of each fiscal quarter and fiscal year, respectively. Loan Agreement § 7.05. Carbonyx has not provided the Lenders with these documents as required under the Loan Agreement.

31.     Upon notice from the Lenders owning Notes with a value greater than 50% of the total value of the outstanding Notes (the "Majority Lenders"), Carbonyx is also required to permit the Majority Lenders to audit, review, make extracts from or copy any and all corporate and financial books and records of Carbonyx and its subsidiaries, and is required to discuss the business affairs of Carbonyx and its subsidiaries with the Majority Lenders. Loan Agreement § 7.06. The Majority Lenders provided such notice on October 31, 2018. To date, Carbonyx has refused provide the Majority Lenders with the documents or information responsive to their request.

11

32.     Given Carbonyx's defaults, the Majority Lenders are authorized to pursue any available remedy to collect the payment of principal and interest on the Notes on behalf of *all* of the Lenders. Loan Agreement §§ 6.03, 6.05. Here, Plaintiffs Mrs. Patel, Mr. Rango, and River Partners constitute the Majority Lenders and are authorized to pursue these proceedings on behalf of all Lenders.

33.     Carbonyx further agreed to "indemnify each Lender . . . from, hold each of them harmless against, promptly upon demand pay or reimburse each of them for . . . any and all actions, suits, proceedings (including investigations, litigation or inquiries), claims, demands, causes of action, losses, labilities, damages and reasonably incurred costs and expenses of any kind or nature whatever . . . which may be incurred by or asserted against or involve any of them . . . as a result of, arising out of or related to. . . any [ ] aspect of this Agreement, the Notes, and the other Loan Documents," including "reasonable fees and disbursements of counsel . . ." Loan Agreement § 8.04. And Carbonyx agreed to "pay promptly after demand . . . any and all reasonable costs and expenses incurred by Lenders in connection with the protection, preservation, exercise or enforcement of any of the terms of the" Loan Agreement and related documents "in connection with any foreclosure, collection or bankruptcy proceedings." Loan Agreement § 8.11. The Lenders have already incurred substantial costs and expenses, including attorney's fees, as a result of Carbonyx's breach of the Loan Agreement. To date, Carbonyx has refused to reimburse such costs and expenses or to acknowledge its obligations.

**D.**  **The Transaction with C6 LLC**

34.  Between approximately May 13, 2016 and January 24, 2017, Mr. Patel made payments to Carbonyx on behalf of C6 LLC totaling $3.5 million.  The payments were not a gift or based on a debt due from Mr. Patel to Carbonyx. Rather, the payments were made so that C6 LLC could enter into a sale/leaseback, loan or other arm's length arrangement with Carbonyx.  On information and belief, Carbonyx repeatedly assured Mr. Patel that it would document the payments as a sale/leaseback, loan or other arrangement acceptable to C6 LLC.  On information and belief, a draft term sheet was sent on behalf of C6 LLC to Carbonyx contemplating that the transaction would be a sale/leaseback between Carbonyx and C6 LLC.  On information and belief, the $3.5 million was intended to pay for specific equipment to be installed at the Ardmore Plants, which has since been installed.  However, no sale/leaseback, loan or other arrangement was ever finalized.

35.  After Mr. Patel's death, Mrs. Patel became the sole member of C6 LLC.  She demanded that Carbonyx repay the $3.5 million, but Carbonyx refused.

**E.**  **Carbonyx's Refusal to Repay its Debts or to Provide Documents**

36.  On October 31, 2018, Plaintiffs' counsel sent a letter to Carbonyx that demanded that Carbonyx:  (i) produce for inspection certain documents and information pursuant to the █████████████ Loan Agreement, and Chapter 220 of Delaware General Corporation Law, including documents that Carbonyx was required to, but failed to, produce under the █████████████ Loan Agreement, (ii) █████████████████████████████████ (iii) immediately pay in full all amounts due under the Loan Agreement to the Lenders, (iv) immediately repay the $3.5 million

13

that Mr. Patel paid to Carbonyx on behalf of C6 LLC, (v) reimburse CL&L and the

Lenders for the fees and expenses, including legal fees, that they incurred in connection

with their demand and the enforcement, collection and administration of the ████

████████ Loan Agreement, and (vi) inform Plaintiffs' counsel of Carbonyx's

availability for a discussion immediately following its production.

       37.    Carbonyx responded nearly a month later, on November 28, 2018.

Carbonyx refused to pay any amounts under the ████████████ Loan Agreement,

refused to repay the $3,500,000 advanced by Mr. Patel on behalf of C6 LLC, and refused

to reimburse the Lenders and CL&L for their fees and expenses incurred in connection

with their enforcement of the ████████████ Loan Agreement. Carbonyx also

threatened to sue Plaintiffs *and* seek sanctions against Plaintiffs' counsel for seeking to

enforce Plaintiffs' rights. According to Carbonyx's counsel, these threats were proper

because:



    a.    ████████████████████████████████

    b.    Carbonyx allegedly gave certain unspecified information

        requested by Plaintiffs to now-deceased Mr. Patel, and thus

        seeking the "duplicative and burdensome" information required

        to be provided to CL&L and the Lenders under the ████

        ████████ Loan Agreement is "a form of harassment" and

        grounds for Carbonyx to "sue [Plaintiffs] for bad faith and

harassment and obtain damages and recoup legal fees and expenses."

38. Carbonyx also claimed in its letter that it would be willing to provide certain of Plaintiffs with a very limited number of unaudited documents if, and only if, certain of Plaintiffs proved their interests in C6 LLC and CL&L, agreed to a "Chinese wall" amongst themselves, and entered into a non-disclosure agreement ("NDA").

39. Approximately one week later, Plaintiffs' counsel responded. Instead of responding to Carbonyx's substantive arguments, Plaintiffs sought to move forward the exchange of documents and information to determine whether resolution was possible. Plaintiffs' counsel informed Carbonyx of the ownership of C6 LLC and CL&L, and agreed to consider a reasonable NDA.

40. Carbonyx provided a draft "NDA" on December 14, 2018. The draft contained several provisions wholly unrelated to confidentiality (such as proposed representations and warranties, non-solicitation and non-competition provisions). Plaintiffs' counsel sent a revised draft back to Carbonyx's counsel a few days later. Carbonyx responded weeks later with a revised draft that reinserted non-standard provisions, including a non-competition provision. Plaintiffs' counsel and Carbonyx have since engaged in multiple rounds of comments and revisions on the NDA.  However, even if the NDA was finalized, the documents that Carbonyx has agreed to provide are extremely limited and only a *de minimis* subset of the documents to which Plaintiffs are entitled under the ████████████████ Loan Agreement.

41.     Carbonyx has received in excess of ███████ from the Plaintiffs in various forms of loans and investments while claiming no return on investment to have occurred during this period to allow for any repayment of those investments or even annual results to be audited. Carbonyx has refused to engage with Plaintiffs in good faith, and Plaintiffs have been forced to bring this proceeding to adjudicate their rights.

### FIRST CLAIM FOR RELIEF



46. 

47.

48.

49.

**SECOND CLAIM FOR RELIEF**
**(Breach of the Loan Agreement)**

50.     Plaintiffs repeat and reallege each and every allegation set forth in
the preceding paragraphs as if fully set forth herein.

51.     The Loan Agreement is a valid contract setting forth the duties and
obligations Carbonyx owed to the Lenders.

52.     Under the Loan Agreement, Carbonyx was required to, but failed
to, *inter alia*:

(d)     pay to the Lenders all unpaid principal and interest on the
Loan on May 15, 2017;

(e)     provide the Lenders with: (i) quarterly unaudited consolidated financial statements and (ii) annual audited financial statements, no later than 90 and 180 days following the end of each fiscal quarter and fiscal year, respectively;

(f)     provide the Lenders with certain additional documents and information following notice from the Majority Lenders; and

(g)     promptly upon demand pay or reimburse the Lenders for the costs and expenses they incurred arising out of and in connection with their enforcement of the Loan Agreement.

53.     Carbonyx's failure to perform those duties and obligations breached the Loan Agreement.

54.     The Lenders performed as required under the Loan Agreement.

55.     Carbonyx's breaches of the Loan Agreement directly and proximately caused the Lenders to suffer damages, among other things, in the form of losses of principal and interest payments on the Loan, and the costs and expenses incurred in pursuing the foregoing.

56.     Carbonyx has engaged in continuing breaches of the Loan Agreement by failing to cure its defaults and refusing to provide documents or information to the Lenders.

57.     As a result of Carbonyx's breach of the Loan Agreement, judgment should be entered in favor of the Lenders and against Carbonyx in an amount to be proven at trial but believed to be not less than $26 million, plus interest, expenses, costs and fees (including attorney's fees).

**THIRD CLAIM FOR RELIEF**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

58.     Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

59.     Carbonyx owned Plaintiffs a duty to act in good faith and conduct fair dealing.

60.     Carbonyx breached that duty by engaging in actions reflecting bad faith, including, *inter alia*, by insisting that Carbonyx unilaterally converted the Notes to preferred stock in Carbonyx, and refusing to discuss Carbonyx's breaches of the ████ ████████ Loan Agreement in good faith, or to provide CL&L and the Lenders documents demanded under those agreements without imposing unnecessary and unreasonable hurdles to disclosure.

61.     As a result of Carbonyx's breach of the covenant of good faith and fair dealing, Plaintiffs have suffered damages in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**
████████

62.     ████████████████████████████████████

████████████████████

63.     ████████████████████████████████

████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████

64. ███████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████

████████████████████████████

65. ████████████████████

### FIFTH CLAIM FOR RELIEF
**(Unjust Enrichment/Quantum Meruit)**

66.     Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

67.     Carbonyx was enriched, at the expense of Plaintiff C6 LLC, by its receipt, acceptance and retention of $3.5 million from Mr. Patel on behalf of C6 LLC.

68.     Carbonyx was enriched, at the expense of the Lenders by its alleged "conversion" of the Notes to preferred stock without the consent of the Lenders.

69.     C6 LLC expected that Carbonyx would document the $3.5 million as a sale/leaseback, loan, or other arrangement acceptable to C6 LLC, and that C6 LLC would, at a minimum, receive $3.5 million plus interest from Carbonyx.

70.     The Lenders expected to receive from Carbonyx the amounts due on the Notes, plus interest.

71.     It is against equity and good conscience to permit Carbonyx to retain the foregoing amounts.

20

**SIXTH CLAIM FOR RELIEF**
**(Money Had and Received)**

72.     Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

73.     Carbonyx received and retained $3.5 million on behalf of C6 LLC from Mr. Patel, which money belonged to C6 LLC.

74.     Carbonyx benefitted from its receipt and retention of that money.

75.     Under principles of equity and good conscience, Carbonyx should not be permitted to keep those funds.

76.     Plaintiff C6 LLC has been damaged by Carbonyx's refusal to return the $3.5 million that rightfully belongs to C6 LLC in the amount of $3.5 million, plus interest.

**SEVENTH CLAIM FOR RELIEF**
**(Promissory Estoppel)**

77.     Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

78.     Carbonyx received and retained $3.5 million on behalf of C6 LLC from Mr. Patel, which money belonged to C6 LLC.

79.     On information and belief, Carbonyx promised Mr. Patel, who at the time was the sole member of C6 LLC, that Carbonyx would document the $3.5 million as a sale/leaseback, loan, or other arrangement acceptable to C6 LLC.  On information and belief, Carbonyx made this promise to induce Mr. Patel and/or C6 LLC to send Carbonyx the $3.5 million.

80.     On information and belief, after Carbonyx received the $3.5 million, it continued to promise Mr. Patel that it would document the funds as a sale/leaseback, loan, or other arrangement acceptable to C6 LLC.

81.     Mr. Patel and C6 LLC reasonably and foreseeably relied on Carbonyx's representations. On information and belief, based on those representations, Mr. Patel transferred the $3.5 million to Carbonyx on behalf of C6 LLC, and did not demand its immediate return.

82.     Carbonyx benefitted from its receipt and retention of the $3.5 million to the substantial detriment of C6 LLC.

83.     Carbonyx has failed to formally document the $3.5 million transfer as a loan, sale/leaseback, or other acceptable arrangement, and has refused to repay the $3.5 million.

84.     As a result, C6 LLC has been damaged in an amount to be proven at trial but not less than $3.5 million, plus interest.

**EIGHTH CLAIM FOR RELIEF**



85.

86.

87. 

88.

### NINTH CLAIM FOR RELIEF
**(Indemnification/Attorney's Fees Pursuant to the Loan Agreement)**

89.     Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

90.     Under the terms of the Loan Agreement, Carbonyx agreed to indemnify the Lenders, and promptly upon demand pay or reimburse each of them for, among other matters, costs and expenses arising from the Loan Agreement, including attorney's fees, in connection with the Lenders' enforcement of the Loan Agreement, collection of the amounts due under the Loan Agreement, and Carbonyx's breaches thereof.

91.     The Lenders have incurred, and continue to incur, substantial costs and expenses in connection with their enforcement of and collection pursuant to the Loan Agreement, including with respect to their demands to Carbonyx and this action.

92.     The Lenders have demanded that Carbonyx pay or reimburse them for such amounts, but Carbonyx has refused.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Carbonyx as follows:

(i)     Awarding money damages, equitable relief, and/or ███████

███████ in favor of Plaintiffs and against Carbonyx for

Carbonyx's breaches of contractual, common law, and any other

duties, in an amount to be proven at trial, including interest

thereon;

(ii)    Awarding Plaintiffs their reasonable costs and expenses incurred in

this action, including attorney's and expert fees, and awarding

CL&L and the Lenders any other costs and expenses incurred in

connection with their enforcement of the ███████

Loan Agreement, including counsel fees and expert fees; and

(iii)   Granting such other or further relief as the Court may deem just

and proper in the circumstances.

Dated:  February 14, 2019

OLSHAN FROME WOLOSKY LLP

By:  _____

Kerrin T. Klein
1325 Avenue of the Americas
New York, New York 10019
212-451-2300
kklein@olshanlaw.com

*Attorneys for Plaintiffs*

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38, Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: February 14, 2019

OLSHAN FROME WOLOSKY LLP

By: _____

Kerrin T. Klein
1325 Avenue of the Americas
New York, New York 100191
212-451-2239
kklein@olshanlaw.com

*Attorneys for Plaintiffs*