# Exhibit L

1215781-1

# O L S H A N

1325 AVENUE OF THE AMERICAS • NEW YORK, NEW YORK 10019
TELEPHONE: 212.451.2300 • FACSIMILE: 212.451.2222

October 31, 2018

BY EMAIL AND FEDERAL EXPRESS

Carbonyx Inc.
Attn: Siddhartha Gaur
1255 W. 15th Street
Suite 320
Plano, TX 75075
sgaur@carbonyx.com

Re:   Notice of Defaults and Demand to Carbonyx Inc. ("Carbonyx")

Dear Mr. Gaur:

We write on behalf of:

(i)     Frank Rango ("Rango"), Bhavna Patel ("Patel"), heir of Mukesh Patel, Harmir
        Realty Co. LP and River Partners 2012 – CBX LLC, representing the lenders
        pursuant to the $13.225 million loan under the Amended and Restated Loan and
        Warrant Issuance Agreement dated as of May 1, 2012 (the "Loan Agreement,"
        such lenders together, the "Lenders," such loan, the "Loan");

(ii)    Carbonyx License & Lease LLC (the "Royalty Buyer") in respect of the Second
        Amended and Restated Royalty Stream Purchase Agreement among Carbonyx
        and the Royalty Buyer dated as of July 20, 2012 (the "Royalty Stream
        Agreement");

(iii)   Patel in respect of a $3.5 million loan to Carbonyx (the "Second Loan"); and

(iv)    Rango as a purchaser of all of the shares of Carbonyx owned by ND CH
        Investors, LLC.

Carbonyx is in default under the Loan Agreement and under the Second Loan and is in
breach of numerous covenants with the Lenders and the Royalty Buyer.

*First*, the Loan had a due date of May 15, 2017. Carbonyx failed to pay all principal and
accrued interest due to the Lenders on May 15, 2017, or at any time since, and is therefore in

October 31, 2018
Page 2

default of payment obligations under the Loan Agreement.[1] Carbonyx further breached the Loan Agreement by failing to provide all financial statements required under Section 7.05.

Under the Loan Agreement, Carbonyx's failure to pay the Lenders constitutes an Event of Default. *See* Loan Agreement § 6.01. The Lenders hereby demand immediate payment in full of all amounts due to them under the Loan Agreement. The Lenders are further entitled to pursue any and all available remedies including, but not limited to, pursuing litigation against Carbonyx to collect the unpaid principal and interest, seeking the Lenders' reasonable costs, expenses and attorney's fees, and investigating, and potentially challenging, other transactions involving Carbonyx or its affiliates, including any improper payments to shareholders, founders or members of management. *See, e.g., id.* §§ 6.03, 8.04, 8.11. The Lenders may also seek to enforce any of the foregoing rights and remedies against Carbonyx's officers, directors, affiliates, and/or shareholders.

*Second*, Carbonyx breached the Royalty Stream Agreement. Under Sections 6.1 and 6.3 of the Royalty Stream Agreement, Carbonyx was required to deliver to the Royalty Buyer royalty reports, annual audit reports and interim financial statements. Carbonyx has failed to do so. Without the requisite financial information, the Royalty Buyer is unable to determine definitively whether Carbonyx is also in breach for, among other items, failure to pay the Royalty Buyer its share of the royalties due under the Royalty Stream Agreement. However, the Royalty Buyer believes that Carbonyx failed to pay the Royalty Buyer its share of the royalties because, *inter alia*, the Royalty Buyer is aware that Carbonyx's Ardmore facility produced products that should have generated royalties since the date of the Royalty Stream Agreement.

In addition, under Section 6.6 of the Royalty Stream Agreement, Carbonyx is required to keep and maintain all of its properties necessary or useful in its business in good condition, repair and working order. The Royalty Buyer understands that Carbonyx is in breach of this provision as well.

The Royalty Buyer hereby demands all documents that Carbonyx was required to, but failed to, produce under the Royalty Stream Agreement, as well as its share of any unpaid royalties. If Carbonyx fails to provide the Royalty Buyer with the foregoing information and royalties within the next fifteen business days, the Royalty Buyer shall be entitled to an increased royalty percentage and shall be entitled to demand, sue for, foreclose on, collect or make any settlement it deems desirable with respect to the Collateral set forth in the Royalty Stream Agreement. *See* Royalty Stream Agreement §§ 3.2(c), 6.9(d). The Royalty Buyer is also entitled to pursue any and all additional remedies including, but not limited to, seeking the Royalty Buyer's reasonable costs, expenses and attorney's fees, and demanding such further actions as the Royalty Buyer deems necessary to carry out the purposes of the Royalty Stream Agreement. *See, e.g., id.* §§ 9.5, 9.6, 9.18.

---

[1] Any claim by Carbonyx that the loans converted into preferred stock has no merit. Any such conversion would have required the unanimous approval of the Lenders. This was not obtained. And, while a subset of Lenders may have indicated "tentative" agreement with the idea of conversion, no such agreement was ever formalized. Carbonyx' unilateral mailing of preferred stock certificates did not – and could not – equate to a bilateral agreement or function to terminate the Lenders' rights under the Loan Agreement.

October 31, 2018
Page 3

*Third*, between May 13, 2016 and January 24, 2017, Mukesh Patel made several loan payments to Carbonyx, which totaled $3.5 million. Despite its repeated assurances that it would do so, Carbonyx has not documented this as a loan or as any other acceptable interest. Thus, Patel hereby demands immediate repayment of $3.5 million loan.

In connection with the foregoing, the Lenders and the Royalty Buyer demand certain documents and information from Carbonyx as set forth below. And as noted above, under the Loan Agreement and Royalty Stream Agreement, the Lenders and Royalty Buyer are entitled to receive and review certain documents and information from Carbonyx, (in addition to the entitlement to direct the conduct of any proceeding for any remedy for Carbonyx's breaches). *See* Loan Agreement §§ 6.05, 7.06; Royalty Stream Agreement §§ 6.2, 9.18. Moreover, as a shareholder of Carbonyx, Rango[2] is also entitled to inspect Carbonyx's books and records pursuant to Section 220 of Delaware General Corporation Law.

Thus, and to enable their evaluation of additional potential immediate and longer term measures to address the breaches and defaults, the Lenders and Royalty Buyer hereby demand that, within fifteen business days of the date of this letter, Carbonyx:

1. Produce for inspection:

    i. Carbonyx's individual and consolidated unaudited quarterly and audited annual reports and financial statements for the last five years (including a balance sheet, income statement, statement of cash flows, statement of owner's equity and related footnotes);

    ii. A schedule of Carbonyx's and each of its subsidiaries' liabilities;

    iii. A schedule of any and all liens on the assets of Carbonyx and each of its subsidiaries;

    iv. A schedule of any and all pending and threatened litigation, defaults, claims or regulatory action with respect to Carbonyx and each of its subsidiaries;

    v. A schedule of Carbonyx's and each of its subsidiaries' capital and operating leases;

    vi. A schedule of Carbonyx's and each of its subsidiaries' real estate assets;

    vii. A schedule of Carbonyx's and each of its subsidiaries' personal property with value in excess of $200,000;

---

[2] On October 15, 2018, Rango purchased all shares of Carbonyx that were owned by ND CH Investors, LLC, and hereby demands that Carbonyx record that transfer of ownership

October 31, 2018
Page 4

    viii.    Carbonyx's and each of its subsidiaries' individual and consolidated financial projections for the next two years;

    ix.    All documents relating to Carbonyx's April 16, 2008 License Agreement with United States Steel corporation (and any amendments thereto), including but not limited to all reports concerning royalties paid or payable by United States Steel to Carbonyx;

    x.    All documents and communications relating to Carbonyx's past or existing agreements, arrangements and projects with United States Steel corporation, including current status thereof;

    xi.    All documents relating to Carbonyx's April 10, 2008 License Agreement with Carbon Technologies Pvt. Ltd. (and any amendments thereto), including but not limited to all reports concerning royalties paid or payable by First Carbon Technologies Pvt. Ltd. to Carbonyx;

    xii.    All documents relating to the Intellectual Property License dated as of September 14, 2005 referred to on page 7 of the Royalty Stream Agreement, including but not limited to all documents concerning any sale, assignment, transfer, pledge, mortgage, grant of a security interest in, or disposal or encumbering of such license;

    xiii.    Documents sufficient to determine whether, over the last five years, Carbonyx has adequately maintained its properties under Section 6.6 of the Royalty Stream Agreement;

    xiv.    Documents sufficient to determine the present value of the Collateral, as defined in the Royalty Stream Agreement;

    xv.    Each Royalty Agreement, as defined in the Royalty Stream Agreement;

    xvi.    Documents sufficient to determine the dates and amounts of all royalties generated by Carbonyx's Ardmore facility on or after September 12, 2008;

    xvii.    Documents sufficient to identify the owners of all patents and other intellectual property, whether in the United States or abroad, that at any time in the last five years has been licensed, owned, or otherwise used by Carbonyx and any of its subsidiaries;

    xviii.    A schedule of Carbonyx's and each of its officers', directors', affiliates', and subsidiaries' intellectual property licenses;

    xix.    All documents and communications concerning any payments of $5,000 or more by Carbonyx or any subsidiary of Carbonyx to any of Carbonyx's, or Carbonyx's subsidiaries', officers, directors, shareholders, or to any

October 31, 2018
Page 5

        affiliates of, or parties related to, any of the foregoing on or after the date of the Loan Agreement;

    xx.    All tax returns of Carbonyx and its subsidiaries on or after the date of the Loan Agreement; and

    xxi.    All documents, including correspondence, relating to Patel's $3.5 million loan to Carbonyx.

2.    Inform the Lenders and Royalty Buyer of Carbonyx's and its subsidiaries' current:

    i.    Ownership structure, including any equity holders (and the % amounts owned), affiliates, parents, and subsidiaries; and

    ii.    Capital needs overall, with separate identification of each major category of capital need and the amount thereof.

       The Lenders and Royalty Buyer further demand a meeting with Carbonyx concerning its defaults and pursuant to Section 7.06 of the Loan Agreement and Section 6.2 of the Royalty Stream Agreement, and that Carbonyx reimburse all fees and expenses, including legal fees, that the Lenders and Royalty Buyer have and will continue to incur in connection with this demand and the enforcement, collection and administration of the Loan Agreement and Royalty Stream Agreement.  No later than November 10, 2018, please:  (i) confirm that Carbonyx will produce the requested documents and information, (ii) confirm that Carbonyx will reimburse  the Lenders' and Royalty Buyer's fees and expenses, including attorney's fees, and (iii) and inform us of Carbonyx's availability for a discussion immediately following its production.

       Nothing in this letter shall be construed as a waiver of any right, claim or remedy by the Lenders and Royalty Buyer, all of which are expressly reserved.  Thank you for your immediate attention.

                        Very truly yours,

                        Mitchell Raab