UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ x
CARBONYX LICENSE & LEASE LLC, C6    :
ARDMORE VENTURES, LLC, RIVER        :
PARTNERS 2012 - CBX LLC, BHAVNA     :
PATEL, and FRANK RANGO,             :
                                    :
            Plaintiffs,             :
                                    :
            -v-                     :
                                    :
CARBONYX INC.,                      :
                                    :
            Defendant.              :
------------------------------------ x

SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____

19-cv-1540 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.

Now before the Court is the motion of plaintiffs Carbonyx

License & Lease LLC ("CL&L"), C6 Ardmore Ventures, LLC ("C6

LLC"), River Partners 2012 - CBX LLC ("River Partners"), Bhavna

Patel ("Mrs. Patel"), and Frank Rango ("Mr. Rango") for partial

summary judgment in their favor with respect to certain claims

arising out of the Loan Agreement (as defined below). ECF No.

42. For the reasons set forth below, plaintiffs' motion is

granted with respect to (1) all parts of the second claim for

relief (breach of the Loan Agreement) except the alleged breach

of § 7.06 of the Loan Agreement and (2) the ninth claim for

relief (indemnification pursuant to the Loan Agreement). The

motion is denied in all other respects.

## Background

Except where otherwise noted, the following undisputed facts are taken from the parties' Rule 56.1 statements.

Parties

Plaintiffs in this action consist of: (1) CL&L, a limited liability company organized under the laws of Delaware; (2) C6 LLC, a limited liability company organized under the laws of Texas; (3) River Partners, a limited liability company organized under the laws of Delaware with its principal office in New York City; (4) Mrs. Patel, formerly married to Mukesh Patel ("Mr. Patel") until he passed away on April 29, 2017; and (5) Mr. Rango. Plaintiffs' Rule 56.1 Statement of Material Facts, ECF No. 48 ("Plaintiffs 56.1 Statement") ¶¶ 1-5. Defendant Carbonyx Inc. ("Carbonyx"), a company incorporated under the laws of Delaware with its principal place of business in Texas, holds licenses to intellectual property rights related to manufacturing of carbon-alloy synthesis products used in the iron and steel industry. Id. ¶ 6; see also Defendant's Response to Plaintiffs' Statement of Material Facts and Counter-Statement of Material Facts, ECF No. 51 ("Defendant 56.1 Statement") ¶ 57. Siddharta Gaur ("Mr. Gaur") has been the Chief Executive Officer of Carbonyx at all times since its founding in 2000. Plaintiffs 56.1 Statement ¶ 6. Mr. Patel and Mr. Gauer had a business relationship with each other for over ten years concerning

2

investments in Carbonyx. Defendant 56.1 Statement ¶ 58. From the late 2000s to the early 2010s, plaintiffs invested over $34 million in Carbonyx in connection with three transactions at issue in this action. Plaintiffs 56.1 Statement ¶ 7. The instant motion for partial summary judgment concerns claims arising from one of these three transactions.

Loan Agreement and Notes

In 2012, Carbonyx borrowed $13.225 million from Mr. Patel,[1] Mr. Rango, Harmir Realty Co. LP ("Harmir"), and River Partners (collectively, "Lenders") by issuing notes pursuant to an Amended and Restated Loan and Warrant Insurance Agreement, dated May 1, 2012 and governed by New York law. Id. ¶¶ 8-10; see also ECF No. 45-1 ("Loan Agreement") § 8.01; Rango Aff., Ex. B, ECF No. 45-2; Patel Aff., Ex. B, ECF No. 46-2; Discolo Aff., Ex. A, ECF No. 47-1; Klein Decl., Ex. C, ECF No. 44-3 (collectively, "Notes"). Under the terms of the Loan Agreement, all accrued and unpaid interest and principal were due on the maturity date of May 15, 2017. Loan Agreement § 2.03(c). Carbonyx was also

---

[1] The term "Lenders" includes Mr. Patel until his death on April 29, 2017, and any relevant successors in interest (including but not limited to the estate of Mr. Patel (the "Estate") and his widow Mrs. Patel) at all times thereafter. Plaintiffs 56.1 Statement ¶¶ 4, 48. On March 15, 2019, the Estate assigned to Mrs. Patel all of its right, title, and interest in, to and under the Loan Agreement, the Note, and the warrant received by Mr. Patel. Id. ¶ 52.

required to make interim payments of all accrued and unpaid interest semi-annually, starting on November 15, 2012. Id. § 2.04.

Although Carbonyx initially complied with those terms, it stopped making interest payments starting on November 15, 2015; it also did not pay the principal and interest due on the maturity date. Plaintiffs 56.1 Statement ¶¶ 20-23, 25.

The main dispute in the instant motion is whether the Notes were cancelled and replaced in April 2017 by preferred stock and warrants for the purchase of common stock in Carbonyx (the "Alleged Conversion"), thereby waiving the Lenders' rights to payments under the Loan Agreement and the Notes. Id. ¶¶ 24-26, 34; Defendant 56.1 Statement ¶¶ 24-26, 34.

## Alleged Conversion

On February 12 and 14, 2017, Mr. Patel emailed Mr. Gaur, copying Mr. Rango, regarding potential terms for a "tentatively agreed . . . debt restructuring." Plaintiffs 56.1 Statement ¶ 35; Defendant 56.1 Statement ¶ 73. On February 28, 2017, Mr. Gaur emailed to Mr. Patel (without copying other Lenders) (1) a copy of the Board Resolutions of Carbonyx, which authorized Carbonyx to accept the Alleged Conversion, and (2) copies of four "Terms of Conversion," one for each of the four Lenders. Plaintiffs 56.1 Statement ¶ 36; Defendant 56.1 Statement ¶ 76;

4

Plaintiffs' Response to Defendant's Counter-Statement of Material Facts, ECF No. 57 ("Plaintiffs 56.1 Response") ¶ 76. Although Mr. Gaur's signature appeared on each of these Terms of Conversion, no Lender ever signed them. Plaintiffs 56.1 Statement ¶ 36.

On March 2, 2017, Mr. Gaur sent updated versions of the Board Resolutions and the Terms of Conversion to Mr. Patel. Id. ¶ 37; Defendant 56.1 Statement ¶ 78. Once again, while Mr. Gaur's signature appeared on each of these updated Terms, no Lender ever signed them. Plaintiffs 56.1 Statement ¶ 37. Later that day, Mr. Patel responded to Mr. Gaur's email, stating "I think [other Lenders] will ask for the bylaws or other articles that explain the terms as well" and proposing a revision to the Terms of Conversion. Id. ¶ 38. In response, Mr. Gaur sent further updated versions of the Terms of Conversion to Mr. Patel. Id. ¶ 39. Yet again, even though Mr. Gaur's signature appeared on each of these documents, no Lender ever signed them. Id. Mr. Patel, in his response on the same day, wrote "looks OK . . . . I am not home for a week so hold off mailing," and, following up on April 13, 2017, wrote "[w]e need to print these out and execute these tomorrow so I can give them to [Mr. Rango]," referring to the Terms of Conversion and the Board

Resolutions, among other documents. Id. ¶ 40; Defendant 56.1 Statement ¶ 82.

On April 14, 2017, Mr. Patel came to Carbonyx's office, where Mr. Gaur gave Mr. Patel, among other documents, Carbonyx's by-laws, Board Resolutions, Terms of Conversion, warrants, and preferred share certificates to be distributed to the Lenders. Defendant 56.1 Statement ¶¶ 37, 83; Plaintiffs 56.1 Statement ¶ 50. The last three categories of documents were never signed by the Lenders. Id.

Before such documents could be distributed to the Lenders, Mr. Patel unexpectedly passed away on April 29, 2017. Plaintiffs 56.1 Statement ¶ 48. According to Carbonyx, the preferred share certificates were subsequently distributed by the Estate of Mr. Patel to each Lender on May 22, 2017. Deposition Transcript of Hiten Patel, Gaur Decl., Ex. Q, ECF No. 49-17 ("Hiten Tr.") 51:2-52:13; Defendant 56.1 Statement ¶ 100. Plaintiffs disagree, stating that River Partners never received those certificates and that Mr. Rango did not receive his until 2018. Plaintiffs 56.1 Response ¶ 100.

After Mr. Patel passed away, Mr. Rango reached out to Mr. Gaur on the status of the Alleged Conversion, to which Mr. Gaur responded:

> [Mr. Patel] finalized the terms of the [Alleged Conversion] in the month of March (email attached; March

6

> 2nd 2017) but was traveling and so was not able to close.
> He wanted to complete the process before our visit to
> Korea on April 17th. He visited the office (email
> attached; April 13, 2017) with the specific objective to
> achieve the same on April 14th 2017. He finalized and
> accepted all the documents as part of the closing and
> took the complete package of the documents and Share
> certificates to be delivered to everyone.

Id. ¶ 50.

On October 31, 2018, plaintiffs' counsel sent a letter to

Carbonyx demanding, inter alia, payment of amounts due under the

Loan Agreement and the Notes, which Carbonyx refused to pay. Id.

¶¶ 55-57; Letter re: Notice of Defaults and Demand to Carbonyx

Inc., dated October 31, 2018, Klein Decl., Ex. L, ECF No. 44-13.

Prior to that date, none of the plaintiffs had demanded payment

of principal or interest due. Defendant 56.1 Statement ¶ 64.[2]

Now before the Court is plaintiffs' motion for partial

summary judgment on their second (breach of the Loan Agreement),

part of third (breach of the implied covenant of good faith and

fair dealing), and ninth (indemnification pursuant to the Loan

Agreement) claims for relief. ECF No. 42. Plaintiffs' main

argument is that, because the Alleged Conversion was not a valid

modification of the Loan Agreement, Carbonyx's failure to pay

interest and principal constitutes a breach under the Loan

---

[2] Plaintiffs deny this statement, but the documentation they cite
does not contradict this alleged fact. See Plaintiffs 56.1
Statement ¶ 64.

Agreement. Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment, ECF No. 43 ("Plaintiffs Mem."), at 1-2; see also Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Partial Summary Judgment, ECF No. 56 ("Plaintiffs Reply"), at 1. Carbonyx opposes. Defendant Opp.

## Analysis

Under Rule 56(a) of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of demonstrating the absence of a genuine dispute of fact, and, to award summary judgment, the court must be able to find after drawing all reasonable inferences in favor of a non-movant that no reasonable trier of fact could find in favor of that party." Palmer/Kane LLC v. Rosen Book Works LLC, 204 F. Supp. 3d 565, 568 (S.D.N.Y. 2016).[3]

## I. Whether summary judgment should be granted on plaintiffs' second claim for relief (breach of the Loan Agreement)

Under applicable New York law, the elements of a cause of action to recover damages for breach of contract are: "the existence of a contract, the plaintiff's performance under the

---

[3] Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

8

contract, the defendant's breach of that contract, and resulting damages." JP Morgan Chase v. J.H. Elec. of New York, Inc., 69 A.D.3d 802, 803 (N.Y. App. Div. 2010). It is undisputed here that Carbonyx did not make any payment of principal or interest due on or after November 15, 2015. Plaintiffs 56.1 Statement ¶ 25; Defendant 56.1 Statement ¶ 25. Therefore, summary judgment should be granted in favor of plaintiffs with respect to breach of payment obligations under the Loan Agreement if the Alleged Conversion was not valid – the key issue in this motion.

## A. Whether the Alleged Conversion was valid under the terms of the Loan Agreement and the statute of frauds

The Loan Agreement states, as relevant here:

[T]he right of any Lender to receive payment of principal of (including any capitalized PIK Interest) and interest on the Notes held by it, on or after the respective due dates expressed in the Notes . . . shall not be impaired or affected without the consent of such Lender. . . .

No provision of [the Loan Agreement] or any other Loan Documents [including the Notes] may be amended, modified or waived without the express written consent of the Borrower and the Majority Lenders, provided that no such amendment, modification or waiver of . . . Sections 2.03, 2.04, 2.05 or 8.05 shall be effective without the consent of all of the Lenders . . . provided further that no such amendment, modification or waiver shall (i) reduce the principal amount of any Note or reduce the rate of interest thereon . . . or (ii) postpone the scheduled date of payment of the principal amount of any Note, or any interest thereon . . . without the written consent of each Lender affected thereby . . . .

THIS WRITTEN AGREEMENT, THE NOTES AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR,

9

CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS AMONG THE
PARTIES.

Loan Agreement §§ 6.01(a), 8.05, 8.10. Also, under the

applicable provision of the New York statute of frauds, a

written agreement that "contains a provision to the effect that

it cannot be changed orally, cannot be changed by an executory

agreement unless such executory agreement is in writing and

signed by the party against whom enforcement of.the change is

sought." N.Y. Gen. Oblig. Law § 15-301.[4]

    There is no doubt that the Alleged Conversion violated all

of the above provisions in the Loan Agreement and, moreover, was

unenforceable under the New York statute of frauds. At best, the

Alleged Conversion was memorialized (1) in email exchanges

between Mr. Patel and Mr. Gaur and the attachments thereto

(e.g., drafts of the Terms of Conversion), see Plaintiffs 56.1

---

[4] N.Y. Gen. Oblig. Law § 5-701(a)(1), another provision of the
New York statute of frauds, requires that contracts that are not
capable of performance within one year of their making be in
writing and subscribed to by the party to be charged with. And,
it is well established that the doctrine of partial performance,
discussed below, may be an exception to § 15-301, but not § 5-
701(a)(1). See Webber v. Dash, No. 19-cv-610 (CM), 2019 WL
1213008, at *6 (S.D.N.Y. Feb. 25, 2019); CMC Transaction Servs.,
LLC v. IDEX Corp., No. 18-cv-4925 (PAC), 2019 WL 3496643, at *3
(S.D.N.Y. Aug. 1, 2019). However, the main focus of the present
motion is whether the Loan Agreement was novated and cancelled
(which fits squarely under § 15-301), rather than whether the
terms of preferred stock are enforceable (which fits squarely
under § 5-701(a)(1)). Therefore, § 5-701(a)(1) is not directly
relevant for deciding the instant motion.

10

Statement ¶¶ 35-37, 39-40; Defendant 56.1 Statement ¶¶ 73, 76, 82, and (2) in the new preferred share certificates in Carbonyx, see Defendant 56.1 Statement ¶¶ 37, 83; Plaintiffs 56.1 Statement ¶ 50. None of these documents was ever signed by any of the Lenders and thus, under the plain terms of the Loan Agreement, could not constitute written consent of the Lenders. Furthermore, emails from Mr. Patel regarding the terms of a tentative transaction and his statement that a draft agreement "looks OK" or that certain documents should be printed out and executed are not written agreements by any of the Lenders. Therefore, unless the partial performance exception discussed below applies, the Alleged Conversion was not a valid modification, amendment, or waiver of the Lenders' rights under the Loan Agreement.[5]

## B. Whether an exception to the no-modification provisions of the Loan Agreement and the statute of frauds applies

---

[5] Carbonyx correctly notes that the above statute of frauds provision applies only if Carbonyx is attempting to prove the existence of an executory agreement. Defendant Opp. 15-16 (referencing Roes v. Spa Realty Associates, 42 N.Y.3d 3338, 343 (1977)). However, Carbonyx incorrectly argues that the Alleged Conversion was not an executory agreement, based on its belief that the Notes were already replaced by the preferred shares and the Alleged Conversion was already completed. Id. at 16. To the contrary, the Alleged Conversion was an executory agreement, because the Terms of Conversion provided for, inter alia, dividends payable over several years, with a final redemption date in 2027. See Plaintiffs 56.1 Response ¶ 83.

11

An exception to the non-modification provisions of the Loan Agreement and the statute of frauds may arise under the equitable doctrine of partial performance, applicable when a party induces another party to substantially perform in reliance upon an oral agreement. See Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v. Aegis Group PLC, 93 N.Y. 2d 229, 235 (1999); Rose v. Spa Realty Associates, 42 N.Y.3d 3338, 343 (1977). For this doctrine to apply, partial performance must be "unequivocally referable" to the new oral agreement. Richardson & Lucas, Inc. v. New York Athletic Club of City of New York, 304 A.D.2d 462, 463 (N.Y. App. Div. 2003).

Carbonyx argues that there is compelling evidence of conduct by both Carbonyx and plaintiffs that is incompatible with the text of the Loan Agreement and whose only explanation is that the parties agreed to the Alleged Conversion. Defendant Opp. 18. Alternatively, Carbonyx argues, the issue of whether the parties' conduct is unequivocally referable to an oral modification of the Loan Agreement is a triable issue of fact. Id. at 17.

Even making all reasonable inferences in favor of Carbonyx, however, the Court finds the doctrine of partial performance inapplicable. The main alleged partial performance at issue is Carbonyx's issuance of preferred shares, certificates of which

12

plaintiffs allegedly received.[6] Id. at 18. However, as the
accompanying emails imply, this issuance is at least as
plausibly compatible with the view that Carbonyx was eager to
rescue itself from being in default under the Loan Agreement,
and that, therefore, it sent out the certificates to try to
convince the Lenders that everything was ready to go once the
Lenders agreed. For the "unequivocally referable" criterion to
be satisfied, "the actions alone must be unintelligible or at
least extraordinary, explainable only with reference to the oral
agreement." Anostario v. Vicinanzo, 59 N.Y.2d 662, 664 (1983)
(emphasis added); L&B 57th St., Inc. v. E.M. Blanchard, Inc.,
143 F.3d 88, 93 (2d Cir. 1998) ("[T]he existence of a competing
inference, rather than precluding summary judgment, makes
summary judgment for [plaintiff] appropriate.").

        In addition, there was nothing detrimental to Carbonyx
about issuing these preferred shares; on the contrary, issuing
these shares if the Alleged Conversion had been accepted would
have relieved Carbonyx of its financial predicament under the
Loan Agreement. See Messner Vetere Berger McNamee Schmetterer
Euro RSCG Inc. v. Aegis Grp. PLC, 711 N.E.2d 953, 957 (N.Y.

---

[6] The parties dispute whether all Lenders in fact received the
certificates. Compare Defendant 56.1 Statement ¶ 100; Hiten Tr.
51:2-52:13 with Plaintiffs 56.1 Response ¶ 100. For the purpose
of this summary judgment motion, the Court assumes they all did.

1999) ("Under our jurisprudence, it is the conduct of the entity seeking to enforce the oral agreement, and its detrimental reliance on the agreement, that makes proper the invocation of equitable principles."). If Carbonyx has subsequently paid dividends under the preferred shares, there might be cognizable partial performance and detrimental reliance, but no such dividend was ever paid. See Transcript of the Oral Argument dated November 14, 2019. Thus, the issuance of the certificates here "does not amount to partial performance sufficient to overcome the statute where that action confers no benefit on the party against whom enforcement is sought." Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 122 (2d Cir. 1998).

Other than the issuance of the certificates, Carbonyx mostly relies on the fact that plaintiffs, until October 31, 2018, had not demanded payment of principal or interest that would have been due under the Notes, Defendant 56.1 Statement ¶ 94,[7] and that Mr. Rango had previously sent interest calculations

---

[7] The fact that plaintiffs did not demand payment until October 31, 2018 does not waive their rights under the relevant provisions of the Notes. See Notes 2 ("The Borrower and any and each co-maker, accommodation party, endorser or other Person liable for the payment or collection of this Note expressly waive demand and presentment for payment, notice of nonpayment, protest, notice of protest, notice of dishonor, notice of intent to acceleration, bringing of suit, and diligence in taking any action to collect amounts called for hereinunder and in the handling of Property at any time existing as security in

14

under the Notes to Carbonyx, but stopped sending such notices after November 2015, Defendant 56.1 Statement ¶ 99.[8] Id. But, these actions by the Lenders are at best as compatible with the view that Mr. Rango and other Lenders were holding off making demands for payment under the Notes in order to work out Carbonyx's difficult financial situations as much as they can be explained through the view that the Alleged Conversion took place. Indeed, the former hypothesis has the greater support in the record.[9] For the same reasons as discussed above, therefore,

connection herewith, and shall be directly and primarily liable for the payment of all sums owing and to be owing hereon, regardless of and without any notice, diligence, act or omission as or with respect to the collection of any amount called for hereunder.").

[8] In addition, as alleged circumstantial evidence of partial performance, Carbonyx focuses on the fact that (1) the Estate of Mr. Patel had Mr. Patel's preferred shares transferred to the Estate's name and listed those preferred shares as one of its assets and (2) a firm retained by the Estate to assess Mr. Patel's interest in Carbonyx valued the preferred shares, but not the Notes. Defendant 56.1 Statement ¶¶ 101-02. As plaintiffs correctly point out, however, the Estate's administrative action cannot be deemed a waiver of the Lenders' rights under the Loan Agreement, when this action was based solely on the physical certificates and when the Estate admitted that it had no knowledge of the Alleged Conversion. Plaintiffs 56.1 Response ¶¶ 101-02. Furthermore, the accounting firm was hired to value the interest at issue without taking any legal position on whether the Alleged Conversion occurred, so its valuation document cannot be deemed a waiver as such. Id.

[9] For instance, on October 31, 2017, the Chief Executive Officer of River Partners sent an email to its employee, stating: "We have not converted the bonds to preferred stock and neither has

15

Carbonyx fails to satisfy the high bar that the parties' conduct

unequivocally refers to the alleged oral modification.[10]

In sum, even making all reasonable inferences in favor of

Carbonyx, the Court finds that the equitable doctrine of partial

performance is inapplicable to the issue of whether the Alleged

Conversion was a valid modification of the Loan Agreement and

the Notes.[11] Therefore, the Court grants summary judgment in

favor of plaintiffs in this respect.

### C. Whether summary judgment should be granted on plaintiffs' second claim for breach of the Loan Agreement with respect to Carbonyx's obligation to provide certain financial documents to the Lenders

Section 7.05 of the Loan Agreement requires that Carbonyx

---

[Mr. Rango]. We have the option to but we are working with [Mr. Rango], John and others to see what is the best outcome for us as the bonds defaulted in May." Email from Bob Discolo dated October 31, 2017, Discolo Reply Decl., Ex. A, ECF No. 60-1. On February 2, 2018, Mr. Rango wrote an email to River Partners, stating that "the next step is either to force bankruptcy . . . or alternatively to swap our bonds/preferred shares." Email from Frank Rango dated February 2, 2018, Gaur Decl., Ex. M, ECF No. 49-13.

[10] In addition, other evidence suggests that certain Lenders clearly did not perceive the Alleged Conversion to have taken place, supporting inference that certain parties' conduct was referable to the Alleged Conversion not having taken place. See previous footnote.

[11] Since the Court here holds that the Alleged Conversion was not valid, which is a sufficient ground to grant partial summary judgment in favor of plaintiffs in this respect, the Court need not reach the issue of whether Mr. Patel and/or Mr. Rango had the authority to agree to the Alleged Conversion on behalf of the other Lenders.

16

> provide to each of the Lenders (i) quarterly unaudited
> consolidated financial statements (including a
> consolidated balance sheet, income statement, statement
> of cash flows, statement of owner's equity and related
> footnotes) within 5 Business Days following completion
> but in no event later than 90 days following the end of
> any fiscal quarter and (ii) annual audited financial
> statements within 5 Business Days following completion
> but in no event later than 180 days following the end of
> any fiscal year.

Loan Agreement § 7.05. The parties do not dispute that Carbonyx

stopped producing audited financial statements after 2014.

Defendant 56.1 Statement ¶ 105; Plaintiffs 56.1 Response ¶ 105;

see also Memorandum dated August 17, 2017, Gaur Decl., Ex. V,

ECF No. 49-22. Instead, the parties dispute whether Mr. Rango

and River Partners waived their rights to receive those

documents. Plaintiffs 56.1 Statement ¶ 32; Defendant 56.1

Statement ¶ 32. Because Carbonyx puts forth no evidence that the

Lenders waived their rights as such through express written

consent as required under §§ 8.05, 8.10 of the Loan Agreement

discussed above,[12] summary judgment is granted in favor of

---

[12] The parties also dispute whether Carbonyx handed over all
financial information and documentation that Mr. Patel and Mr.
Rango requested, whether Mr. Rango ever requested such financial
information from Carbonyx, and whether Carbonyx ever provided
these documents to River Partners and Harmir. Defendant 56.1
Statement ¶¶ 31, 105-08; Plaintiffs 56.1 Statement ¶ 31;
Plaintiffs 56.1 Response ¶¶ 105-08. However, in light of the
Court's determination that the Lenders did not waive their
rights to receive financial documents at issue, these disputes
do not affect the conclusion that Carbonyx breached § 7.05 of the
Loan Agreement.

17

plaintiffs with respect to the second claim for relief

pertaining to breach of § 7.05 of the Loan Agreement.

**D. Whether summary judgment should be granted on plaintiffs' second claim for breach of the Loan Agreement with respect to Carbonyx's obligation to provide Mr. Patel, Mr. Rango, and River Partners certain documents upon notice from the Majority Lenders**

Section 7.06 of the Loan Agreement states:

> Upon reasonable notice from the Majority Lenders, the Borrower shall permit any representative(s) of the Majority Lenders to audit, review, make extracts from or copy any and all corporate and financial books and records of the Borrower and its Subsidiaries at all reasonable times during ordinary business hours, and to discuss the business affairs of the Borrower and its Subsidiaries with senior officers of the Borrower.

Loan Agreement § 7.06. As part of their second claim for relief,

plaintiffs allege that, pursuant to this provision, "Carbonyx

was required to, but failed to, . . . provide [Mr. Patel, Mr.

Rango, and River Partners] with certain additional documents and

information" responsive to their requests as set forth in the

demand letter dated October 31, 2018. Amended Complaint, ECF No.

16 ("Amended Complaint"), §§ 33, 53.

The Court denies the motion for summary judgment with

respect to this part of plaintiffs' second claim for relief,

because plaintiffs have not set forth any reason in their briefs

as to why they are entitled to summary judgment in this respect.

**II. Whether summary judgment should be granted on plaintiffs' third claim for relief (breach of the implied covenant of good faith and fair dealing)**

18

Under the third claim for relief, plaintiffs allege that:

> Carbonyx breached [the duty to act in good faith and conduct fair dealing] by engaging in actions reflecting bad faith, including, inter alia, by insisting that Carbonyx unilaterally converted the Notes to preferred stock in Carbonyx, and refusing to discuss Carbonyx's breaches of . . . the Loan Agreement in good faith.

Amended Complaint § 61. The Court denies the motion for summary judgment with respect to plaintiffs' third claim, because plaintiffs do not set forth any reason in their briefs as to why Carbonyx's conduct as such was in bad faith. Even if plaintiffs' argument here were not deemed to be abandoned, there is a triable issue of fact as to whether Carbonyx acted in bad faith in insisting that the Alleged Conversion took place.

## III. Whether summary judgment should be granted on plaintiffs' ninth claim for relief (indemnification pursuant to the Loan Agreement)

Section 8.04 of the Loan Agreement requires that Carbonyx:

> indemnify each Lender . . . from, hold each of them harmless against, promptly upon demand pay or reimburse each of them for . . . any and all actions, suits, proceedings (including investigations, litigation or inquiries), claims, demands, causes of action, losses, liabilities, damages and reasonably incurred costs and expenses of any kind or nature whatever . . . which may be incurred by or asserted against or involve any of them . . . as a result of, arising out of or related to . . . any [ ] aspect of this Agreement, the Notes, and the other Loan Documents, including . . . reasonable fees and disbursements of counsel . . . .

Loan Agreement § 8.04. Also, under § 8.11, Carbonyx agreed to:

> pay promptly after demand . . . any and all reasonable costs and expenses incurred by Lenders in connection with the protection, preservation, exercise or enforcement of

> any of the terms of the Loan Documents or in connection
> with any foreclosure, collection or bankruptcy
> proceedings . . . .

Loan Agreement § 8.11. Because the Court has already determined

that a default occurred under the Loan Agreement, the remaining

issue here is whether indemnification obligations cover inter-

party litigation expenses.

New York law imposes a strong presumption against reading

indemnification provisions to cover expenses incurred in

litigation between the parties. See Hooper Associates v. AGS

Computers, Inc., 548 N.E.2d 903, 905 (N.Y. 1989) ("[A] promise

by one party to a contract to indemnify the other for attorney's

fees incurred in litigation between them is contrary to the

well-understood rule that parties are responsible for their own

attorney's fees, [and] [a] court should not infer a party's

intention to waive the benefit of the rule unless the intention

to do so is unmistakably clear from the language of the

promise."); see also PPI Enterprises (U.S.), Inc. v. Del Monte

Foods Co., 2006 WL 3370698, at *1 (2d Cir. Nov. 20, 2006).

However, the requirement that parties express their intent with

"unmistakable clarity" is not the same as a "magic words" test,

and courts have interpreted indemnification provisions to cover

litigation expenses between the parties even where that coverage

was not explicitly mandated in such words but, nonetheless, the

20

intent was clear. See Mid-Hudson Catskill Rural Migrant

Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 178 (2d Cir.

2005).

Applying this principle to the provisions at issue, the

Court concludes that the language of the Loan Agreement rebuts

the presumption against indemnification of inter-party

litigation expenses. Most importantly, each of the Notes - a

form of which is attached as Exhibit A to the Loan Agreement -

provides:

> If default is made in the payment of this Note (whether
> principal, interest or other amounts) when due . . . and
> the same is placed in the hands of an attorney for
> collection, or suit is filed hereon, or proceedings are
> had in bankruptcy, probate, receivership, or other
> judicial proceedings for the establishment or collection
> of any amount called for hereunder, or any amount payable
> or to be payable hereunder is collected through any such
> proceedings, the Borrower agrees and is also to pay the
> owner and holder of this Note the reasonable attorney's
> fees incurred by the holder in connection therewith.

Notes 2. It is unmistakably clear that the parties intended

that, under §§ 8.04 and 8.11 of the Loan Agreement, expenses

incurred in connection with inter-party collection efforts would

be indemnifiable. See Breed, Abbott & Morgan v, Hulko, 541

N.E.2d 402, 403 (N.Y. 1989) (interpreting a similar provision

and holding that indemnification of inter-party litigation

expenses was contemplated by the parties, because otherwise it

would have been "difficult, if not impossible, to ascertain for

21

what it was that the parties had agreed to indemnify" plaintiff); see also Robbins v. Profile Records, Inc., 266 A.D.2d 67, 67 (N.Y. App. Div. 1999); Hack v. Stang, No. 13-cv-5713 (AJN), 2015 WL 5139128, at *8-10 (S.D.N.Y. Sept. 1, 2015).

For this reason, plaintiffs' motion for summary judgment with respect to the ninth claim for indemnification is granted.[13]

## Conclusion

In sum, plaintiffs' motion for summary judgment is granted with respect to (1) all parts of the second claim for relief (breach of the Loan Agreement) except with respect to breach of § 7.06 of the Loan Agreement and (2) the ninth claim for relief (indemnification pursuant to the Loan Agreement), but denied in all other respects.

The Clerk is directed to close to entry at docket number 42.

SO ORDERED.

Dated:  New York, NY

December $\underline{\mathcal{S}}$, 2019

JED S. RAKOFF, U.S.D.J.

---

[13] As part of their second claim for relief, plaintiffs also allege that "Carbonyx was required to, but failed to, inter alia: . . . (d) promptly upon demand pay or reimburse [Mr. Patel, Mr. Rango, and River Partners] for the costs and expenses they incurred arising out of and in connection with their enforcement of the Loan Agreement." Amended Complaint § 53. As this part of the second claim for relief is essentially the same as the ninth claim for relief, summary judgment is granted with respect to this part of the second claim.